IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Crim. Action No. 08-146-1-2-JJF |
| | : | |
| ED JOHNSON, and | : | |
| G. CAROL JOHNSON, | : | |
| | : | |
| Defendants. | : | |

Lesley F. Wolf, Esquire, Assistant United States Attorney, and
Christopher J. Burke, Assistant United States Attorney, of the
OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware,

Attorneys for Plaintiff.

Christoper S. Koyste, Esquire, of CHRISTOPHER S. KOYSTE, LCC,
Bellefonte, Delaware,

Attorney for Defendant Ed Johnson.

Edson A. Bostic, Esquire, Federal Public Defender, and Brian C.
Crockett, Assistant Federal Public Defender, of the FEDERAL
PUBLIC DEFENDER'S OFFICE, Wilmington, Delaware,

Attorney for Defendant G. Carol Johnson.

**MEMORANDUM OPINION**

October 19, 2009
Wilmington, Delaware

Joseph J. Farnan Jr.
Farnan, District Judge.

Presently before the Court are the following Motions brought by the Government: Motion In Limine To Permit The Introduction Of Defendants' Income Tax Records (D.I. 135); and Motion In Limine To Permit The Introduction Of Evidence Relating To SEC Civil Lawsuit (D.I. 137). Also pending before the Court is Defendants' Motion To Reconsider Motion to Strike Surplusage From Indictment. (D.I. 138, 143.)

For the reasons discussed, the Government's Motion In Limine To Permit The Introduction Of Defendants' Income Tax Records will be granted, and the Government's Motion In Limine To Permit The Introduction Of Evidence Relating To SEC Civil Lawsuit will be granted in part and denied in part. Specifically, the Motion will be granted to the extent that the Court will permit introduction of evidence pertaining to the Final Judgment of Permanent Injunction entered against MERL Holdings, Inc.com, the Permanent Injunction entered against Ed Johnson, and the Stipulation and Order between the SEC and MERL Holdings, Inc.com Resolving the SEC's Motion for Contempt. The Motion will be denied to the extent that the Court will not permit the introduction of the Civil Complaint brought by the SEC against Ed Johnson and MERL Holdings, Inc.com, and the Civil Jury Verdict against Ed Johnson. In addition, Defendants' Motion To Reconsider Motion to Strike Surplusage From Indictment will be

denied.

**I. Background**

On September 11, 2008, a federal grand jury this District returned a fourteen count indictment against Co-Defendants Ed Johnson, and his wife, C. Carol Johnson (collectively, "Defendants"). The Indictment charged that between 2003 and February 2007, Defendants conspired to commit mail and wire fraud, committed multiple counts of mail and wire fraud, and engaged in an illegal monetary transaction. (D.I. 1.)

**II. Defendants' Motion To Reconsider Motion to Strike Surplusage From Indictment**

**A. Parties' Contentions**

By his Motion, Co-Defendant Ed Johnson asks the Court to reconsider its March 4, 2009 Order denying a Motion to Strike Surplusage From Indictment. Defendant contends that, at that time, the record was not as complete to allow for a full understanding of the case. (D.I. 138, at 1.) Specifically, Defendant contends that Paragraphs $2^1$ and $3^2$ of the Indictment

[1]Paragraph 2 of the Indictment reads in relevant part: "Defendant Ed Johnson . . . was barred by court order from serving as an officer or director of HCCC, or any publically traded company, [and] at all time material to this Indictment, Ed Johnson was involved in the day to day operations of HCCC and held himself out as a figure of authority within the Company." (D.I. 1.)

[2]Paragraph 3 of the Indictment reads in relevant part: "In 2003, Ed Johnson also served as Chairman of MERL Financial Group ("MERL"). Between in or around October and December 2003, Carol Johnson and Ed Johnson substituted or caused to be substituted HCCC in place of MERL in relation to certain loan applications

2

(D.I. 1) should be stricken as surplusage under Federal Rule of
Criminal Procedure 7(d) for being irrelevant and prejudicial.
(D.I 138, at ¶3.) Defendant contends Paragraph 2 is immaterial
because it is not necessary to prove allegations in Counts 1-14
of the Indictment, and is prejudicial because it will tend to
confuse the issues at trial. (Id. at ¶4.) Defendant contends
Paragraph 3 is irrelevant because it is not alleging wrongful
conduct, and is prejudicial because it will open the door to
allegedly irrelevant evidence about the civil order. (Id. at ¶5.)
Co-Defendant G. Carol Johnson also adopts this Motion. (D.I.
143.) She additionally contends that the Government previously
argued the language should remain in the Indictment because the
jury would not see the Indictment's allegations, and accordingly,
there was no risk of prejudice. (D.I 144, at 6.) However, she
contends that there is now prejudice because the Government seeks
to introduce evidence as intrinsic which would prove these
allegations. (Id.)

The Government responds that Defendants' Motion does not
meet the legal standard for the granting of motions to
reconsider, and repeats the same argument made in the original
Motion to Strike. (D.I. 146, at 2.) Further, the Government
contends that Defendants must show that the Indictment's

_____

HCCC in place of MERL in relation to certain loan applications
relevant to this Indictment." (D.I. 1.)

contested language is both irrelevant and prejudicial, but have failed to do so because the language is clearly relevant. (Id. at 3.) The Government contends that Paragraph 2 is relevant for several reasons: 1) it relates to Co-Defendant Ed Johnson's role within HCCC; 2) it helps explain the role both Defendants played regarding HCCC; and 3) it helps to demonstrate the Defendants' intent to defraud in two different ways. (Id. at 5-6.) The Government contends that Paragraph 3 is relevant because it provides the necessary factual context for charges pertaining to HCCC's actions concerning a church's loan, and because it provides evidence of the Defendants' intent to defraud. (Id. at 7-8.)

## B. Legal Standard

The purpose of a motion for reconsideration is to correct manifest errors of law or fact, or to present newly discovered evidence. Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citations omitted). It may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided," or to "allow repetition of arguments already briefed, considered and decided." Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240-41 (D. Del. 1990)(citations omitted). Accordingly, a motion for reconsideration may be granted if the moving party demonstrates at least one of the following: 1) an

intervening change in the controlling law; 2) the availability of new evidence that was not available when the court issued its order; or 3) the need to correct a clear error of law or fact, or to prevent manifest injustice. Max's Seafood Café, 176 F.3d at 677. Reconsideration may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court." Brambles USA, 735 F. Supp. at 1241.

## C. Discussion

The Court will deny the Motion to Reconsider. Defendants contend that the Court made a clear error when it denied the original Motion to Strike, and also appear to argue that new evidence exists which was not previously available to the Court. (D.I. 156, at 2.) Defendants' blanket contention that there is now a more complete record does not necessarily mean that new evidence is available. In fact, Defendants fail to point to any previously unavailable evidence, now in the record, which would influence the Court's ruling on this Motion. Accordingly, the issue is whether the Court made a clear error in denying Defendants' original Motion to Strike.

The Court concludes that denial of Defendants' original Motion to Strike was not in error. Under Federal Rule of Criminal Procedure 7(d), the Court may strike surplusage from an indictment. A motion to strike surplusage should be granted if

5

it contains information that is "both irrelevant (or immaterial) and prejudicial." U.S. v. Hedgepath, 434 F.3d 609, 612 (3d Cir. 2006). Language in an indictment need not be essential to the charges, but can be generally relevant to the overall scheme charged. U.S. v. Wecker, 620 F. Supp. 1002, 1006 (D. Del. 1985). Language in an indictment is more specifically relevant if it shows the purpose behind the alleged scheme. Id.

The contested language of Paragraphs 2 and 3 is relevant. While it may not be essential to the Indictment's specific charges, it is generally relevant to the fraudulent schemes alleged by the Government. Further, the Government provided ample descriptions of how the language is relevant for showing the Defendants' fraudulent intent. Defendants provided no authority to support their contentions that Paragraphs 2 is irrelevant because a jury is not required to make a finding on the language contained therein, or that Paragraph 3 is irrelevant because it does not allege wrongful conduct. Even if the language in Paragraphs 2 and 3 is prejudicial to Defendants, the Court concludes denial of this Motion is still proper because the language is relevant. See Hedgepath, 434 F.3d at 612 ("information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand").

**III. Government's Motion In Limine To Permit The Introduction Of Defendants' Income Tax Records**

## A. Parties' Contentions

By its Motion, the Government seeks to introduce Defendants' tax returns for 2003, 2004, 2005, and 2006. The Government contends the tax returns are intrinsic evidence because they allegedly demonstrate that Defendants' were receiving significant income, and that Defendants intended to commit fraud because they concealed the fraudulent source of that income (i.e., loan application fees from HCCC). (D.I. 135, at 4-5.) Specifically, the Government contends that the 2005 return directly proves fraudulent intent in that no return was filed until June 2007, after Co-Defendant G. Carol Johnson was questioned by the FBI about her compensation from HCCC. (Id. at 4-5.) According to the Government, the circumstances surrounding the 2005 return indicate that it was filed to conform to the statements Co-Defendant G. Carol Johnson made to the FBI, thus proving her fraudulent intent. (Id. at 6.) Further, the Government contends that the 2003, 2004, and 2006 returns, in which Defendants reported no income from MERL or HCCC, underscore the falsity of the 2005 filing and Defendants' intent to defraud. (Id. at 7.)

Defendants contend that the tax returns are not intrinsic because the Indictment does not allege any tax-related offenses as part of the charges. (D.I. 145, at 4.) Defendants also contend that the alleged tax-related offenses do not directly prove any of the charged crimes, and that the Government is attempting to

7

introduce this evidence to "complete the story" of the charged crimes. (Id. at 3-4.) In regards to the 2005 and 2006 returns specifically, Defendants contend they are not intrinsic to the crimes charged because they were filed after February 2007, when the fraudulent schemes alleged by the Indictment ended. (Id. at 4.)

In the alternative, the Government contends that the tax return evidence demonstrates Defendants' intent to defraud, which is a proper evidentiary purpose under Federal Rule of Evidence 404(b). (D.I. 135, at 8-9.) In response, Defendants rely on U.S. v. Impastato, 535 F. Supp. 2d 732 (E.D. La. 2008), and contend that the tax return evidence is of a different nature than the charged crimes, and accordingly, is too attenuated to demonstrate fraudulent intent in the charged crimes. (D.I. 145, at 6.)

## B. Legal Standard

### 1. Intrinsic Evidence

Federal Rule of Evidence 404(b) is inapplicable when "evidence of uncharged offenses committed by a defendant. . . are intrinsic to the proof of the charged offense." U.S. v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999); see also Fed. R. Evid. 404(b) Advisory Committee's Note. "[A]cts are intrinsic when they directly prove the charged conspiracy." U.S. v. Cross, 308 F.3d 308, 320 (3d Cir. 2002). The Court may not exclude intrinsic act evidence "because it is proof of the ultimate issue in the case."

8

Gibbs, 190 F.3d at 218 (citations omitted). The Third Circuit has thus far reserved judgment as to whether evidence is intrinsic if it is "inextricably intertwined" with or "completes the story of" the charged offense. U.S. v. Cummings, 156 Fed. Appx. 438, 442-43 (3d Cir. 2005).

## 2. "Other Act" Evidence under Federal Rule of Evidence 404(b)

Federal Rule of Evidence 404(b) precludes admission of evidence of other crimes, wrongs, or acts to prove a person's character, or to prove action in conformity. Fed. R. Evid. 404(b). Such evidence may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. In order to comply with Rule 404(b), evidence of other acts must:

(1) have a proper evidentiary purpose; (2) be relevant under Rule 402; (3) satisfy Rule 403 (i.e., not be substantially more prejudicial than probative); and (4) be accompanied by a limiting instruction, when requested pursuant to Federal Rule of Evidence 105, that instructs the jury not to use the evidence for an improper purpose.

Cross, 308 F.3d at 320-21.

## C. Discussion

The Court concludes that the 2003, 2004, 2005, and 2006 tax returns are admissible as intrinsic evidence. Defendants' argument that the 2005 and 2006 returns can not be intrinsic because they were filed after February 2007 is not persuasive because regardless of the date of filing, the returns report

9

income from 2005 and 2006, time periods during which the
Indictment alleges fraudulent conduct. Next, the fact that no
tax-related offenses are alleged in the Indictment does not
preclude the tax returns from being used to prove the charged
crimes. In other contexts, the Third Circuit has recognized that
uncharged tax offenses are admissible as proof of charged crimes.
See e.g., U.S. v. Chandler, 326 F.3d 210, 215-16 (3d Cir. 2003)
(holding that the government may introduce tax evidence, coupled
with evidence of cash purchases, to support its assertion that
the defendant had no legitimate source of income).

     Other Circuits have recognized that a defendant's tax return
is properly admissible as intrinsic evidence of intent to defraud
in fraud prosecutions. See U.S. v. Epstein, 426 F.3d 431, 439
(1st Cir. 2005)(holding that in a mail fraud, wire fraud, and
conspiracy to commit mail and wire fraud prosecution, the
defendant's tax return was intrinsic evidence because it reported
the income defendant had received from the fraudulent scheme, and
it was suggestive of defendant's knowledge of the fraudulent
scheme because not all income was reported). However, other
Circuits permit admission of evidence as intrinsic if it is
"inextricably intertwined" with, or "completes the story of" the
charged offense, but the Third Circuit has reserved judgment on
that issue. Cross, 308 F.3d at 320. Rather, the Third Circuit
has thus far "insisted on a significantly closer connection for

10

exemption from 404(b)." U.S. v. Haas, 184 Fed. Appx. 230, 233-34 (3d Cir. 2006).

Even under this more rigorous standard, the Court concludes the tax return evidence is intrinsic to the charged offenses. Unlike U.S. v. Impastato, relied on by Defendants, the non-tax, charged allegations share the same factual basis as tax return evidence. The Government contends that the money reported as compensation on the 2005 return was actually the fruits of the fraudulent scheme, and that the return "enabl[ed Defendants] to remove the money from the company under the guise of employment compensation." (D.I. 135, at 6-7.) Rather than merely "completing the story" of the fraudulent schemes, the tax returns demonstrate the manner in which Defendants reported, or failed to report, significant income allegedly coming from HCCC loan application fees. Contrary to Defendants' position, an alleged pattern of concealing income, demonstrated by the tax return evidence as a whole, serves as direct proof that Defendants' possessed the requisite fraudulent intent for the crimes charged.

The Court is not persuaded that any potential prejudice Defendants may suffer from admission of the tax return evidence substantially outweighs the probative value of the evidence. A Rule 403 balancing must be conducted even if evidence is determined to be intrinsic. Haas, 184 Fed. Appx. at 234. Defendants contend that if the tax return evidence is admitted,

11

they will need to consult an expert to review and explain the filings.  (D.I. 145, at 6.)  Further, Defendants contend that a lengthy presentation of evidence regarding tax law will confuse the jury and the issues at trial.  (Id. at 6-7.)  While this may be a valid concern, it can be addressed by an appropriate limiting instruction.

## IV.  Government's Motion In Limine To Permit The Introduction Of Evidence Relating To SEC Civil Lawsuit

### A.  Parties' Contentions

The Government seeks to permit the introduction at trial of the following testimony or documentary evidence:

1. the civil complaint brought by the Securities and Exchange Commission against Ed Johnson and MERL Holdings, Inc.com. See Securities and Exchange Commission v. Ed Johnson & MERL Holdings, Inc.com, Civ. No. 02-5490 (GEB)(D. N.J.) ("Civil Complaint");

2. the Final Judgement of Permanent Injunction entered on April 3, 2003 against MERL Holdings, Inc.com ("MERL Holdings Injunction");

3. the April 16, 2004 Stipulation and Order between the SEC and MERL Holdings, Inc.com Resolving the SEC's Motion For Contempt for Failure to Obey the Injunction as to MERL Holdings, Inc.com ("Stipulation and Order");

4. the March 8, 2004 civil jury verdict against Ed Johnson ("Jury Verdict"); and

5. the August 27, 2004 Permanent Injunction Against Ed Johnson enjoining him from "acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act of 1934 or that is required to file reports pursuant to Section 15(d) of the Exchange Act of 1934" ("Johnson Injunction")

(collectively, the "SEC Civil Litigation"). (D.I. 137, at 2-3.)

The Government contends the SEC Civil Litigation evidence is admissible as intrinsic evidence of the charged crimes. In general, the Government contends the evidence is intrinsic because: 1) it explains why Co-Defendant Ed Johnson was barred by court order from acting as an officer or director of a public company, as alleged in the Indictment; 2) it demonstrates the existence of a conspiracy between Defendants; and 3) it demonstrates Defendants' intend to defraud. (D.I. 137, at 4-5.) The Government contends that the SEC Civil Litigation evidence demonstrates the Defendants' intent to defraud in that it supports an inference that HCCC was substituted for MERL Financial Group ("MERL") in processing loan applications, and it further proves that Defendants were aware they would not be able to make good on promises to clients. (Id.) Defendants contend that the SEC Civil Litigation evidence is separate and distinct from the crimes alleged in the Indictment, and accordingly, is not intrinsic because it does not directly prove the crimes alleged in the Indictment. (D.I. 144, at 2.)

In the alternative, the Government contends that the SEC Civil Litigation evidence has proper evidentiary purposes under Federal Rule of Evidence 404(b). (D.I. 137, at 5.) Specifically, the Government contends the SEC Civil Litigation evidence shows: 1) the nature of Defendants' relationship to each other and HCCC; 2) Defendants' motive for Co-Defendant Ed Johnson to hold himself

out as an authority figure in HCCC; and 3) Co-Defendant Ed

Johnson's intent to defraud, knowledge, and absence of mistake.

(Id.) Defendants respond that no proper purposes for admitting

the SEC Civil Litigation exist under Rule 404(b). (D.I. 144, at

8.) Further, they contend that even if a proper purpose exists,

this evidence is unfairly prejudicial to the defense and would

lead to a danger of jury confusion. (Id.)

## B. Legal Standard

### 1. Intrinsic Evidence

Federal Rule of Evidence 404(b) is inapplicable when

"evidence of uncharged offenses committed by a defendant. . . are

intrinsic to the proof of the charged offense." U.S. v. Gibbs,

190 F.3d 188, 217 (3d Cir. 1999); see also Fed. R. Evid. 404(b)

Advisory Committee's Note. "[A]cts are intrinsic when they

directly prove the charged conspiracy." U.S. v. Cross, 308 F.3d

308, 320 (3d Cir. 2002). The Court may not exclude intrinsic act

evidence "because it is proof of the ultimate issue in the case."

Gibbs, 190 F.3d at 218 (citations omitted). The Third Circuit

has thus far reserved judgment as to whether evidence is

intrinsic if it is "inextricably intertwined" with or "completes

the story of" the charged offense. U.S. v. Cummings, 156 Fed.

Appx. 438, 442-43 (3d Cir. 2005).

### 2. "Other Act" Evidence under Federal Rule of Evidence 404(b)

Federal Rule of Evidence 404(b) precludes admission of

14

evidence of other crimes, wrongs, or acts to prove a person's

character or to prove action in conformity.  Fed. R. Evid.

404(b).  Such evidence may be admissible for other purposes, such

as "proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident."  Id.  In

order to comply with Rule 404(b), evidence of other acts must:

> (1) have a proper evidentiary purpose; (2) be relevant under
> Rule 402; (3) satisfy Rule 403 (i.e., not be substantially
> more prejudicial than probative); and (4) be accompanied by
> a limiting instruction, when requested pursuant to Federal
> Rule of Evidence 105, that instructs the jury not to use the
> evidence for an improper purpose.

Cross, 308 F.3d at 320-21.

### C. Discussion

#### 1.  Johnson Injunction

The Court concludes that the Johnson Injunction is

admissible as intrinsic evidence.  U.S. v. Hoffecker, 530 F.3d

137 (3d Cir. 2008), in which Charles Paul Hoffecker ("Hoffecker")

appealed his jury conviction of conspiracy to commit mail and

wire fraud and mail fraud, is precedential authority which guides

the Court's analysis.  In that case, Hoffecker argued the

District Court erred in admitting evidence of a Federal Trade

Commission injunction permanently enjoining him from

"telemarketing precious metal when the purchasing of precious

metals is to be made in whole or in part with financing."

Hoffecker, 530 F.3d at 188.  The Third Circuit held that the

District Court properly admitted evidence of the civil injunction

as intrinsic evidence to the charged offenses.  Id. at 190.

As in Hoffecker, the Johnson Injunction was part of the charged offense.  The Indictment charges that Ed Johnson "was barred by court order from serving as an officer or director of [Heritage Capital Credit Corporation ("HCCC")], or any publicly traded company," but "was involved in the day to day operations of HCCC and held himself out as a figure of authority within the company."  (D.I. 1).  Also, like in Hoffecker, the Government contends they expect to use the Johnson Injunction to show that Defendants intended to engage in conduct forbidden by an injunction. (D.I. 137, at 6.)  Co-Defendant Ed Johnson's attempt to distinguish Hoffecker on the ground that Mr. Hoffecker literally violated an injunction while he did not is unavailing. (D.I. 149, at 5-6.) The Government's allegation is not that Co-Defendant Ed Johnson was serving as an officer and director of HCCC, but rather that the structure of the company and his alleged actions in regard to HCCC were part of a fraudulent "end run around the dictates of the injunction."  (D.I. 137, at 6). Co-Defendant G. Carol Johnson concedes that, under Hoffecker, the Johnson Injunction in intrinsic to the crimes charged.[3] (D.I. 144, at 6.)

_____

[3]As discussed above, Co-Defendant G. Carol Johnson contends that Paragraph 2 of the Indictment should be stricken.  If Paragraph 2 is not stricken, she concedes the Johnson Injunction is intrinsic evidence only because it appears in the Indictment. (D.I. 144, at 6.)

## 2. **MERL Holdings Injunction**

The Court further concludes that the MERL Holdings Injunction is admissible as intrinsic evidence. The Government contends the MERL Holdings Injunction is intrinsic evidence demonstrating intent to defraud because Defendants knew the MERL Holdings Injunction hindered their ability to secure necessary business relationships. (D.I. 137, at 6-7.) Further, the Government contends it is intrinsic because it explains why Defendants began operating their alleged loan scheme through HCCC rather than MERL. (Id. at 7.) Defendants contend the MERL Holdings Injunction is not intrinsic because Defendants are not charged with violations of Section 17(a) of the Securities Act of 1933 in this action, and therefore, the subsequent injunction does not directly prove the charged crimes. (D.I. 144, at 4.) Further, Defendants contend that there is no evidence that the Defendants knew the MERL Holdings Injunction would impede their ability to obtain funding, or even that the injunction actually prevented the Defendants from obtaining funding. (Id.)

Because the MERL Holdings Injunction explains why operation of the alleged loan scheme was shifted from MERL[4] to HCCC, thus directly proving an intent to defraud, the Court will allow its introduction as intrinsic evidence. In Hoffecker, evidence of an

---

[4]MERL was the corporate parent of MERL Holdings, Inc. (D.I. 137, at 8.)

injunction was intrinsic because it explained why Hoffecker
"created layers of false pretenses to hide his ownership."
Hoffecker, 530 F.3d at 190. Similarly, the Government indicates
it intends to use the MERL Holdings Injunction to argue that
Defendants began using a new company name to prevent future
investors from learning of Co-Defendant Ed Johnson's SEC history.
(D.I. 137 at 8.)

### 3. Stipulation and Order

Although the Court is not persuaded that the Stipulation and
Order is intrinsic evidence, it will allow the Stipulation and
Order to be admitted under Rule 404(b) of the Federal Rules of
Evidence. The Government does not specifically state how the
Stipulation and Order itself is intrinsic. (See D.I. 137, at 6-
12.) Rather, the Government seems to rely on the general
arguments applicable to all SEC Civil Litigation evidence: that
the Stipulation and Order proves the existence of a conspiracy,
as well as Defendants' intent to defraud. Defendants contend
that since they are not charged with violations of Section 17(a)
of the Securities Act of 1933, the Stipulation and Order, which
admitted violations of the MERL Holdings Injunction, does not
directly prove any crimes charged in this action. (D.I. 144, at
3-4.) Further, Defendants contend that this evidence could
directly prove Defendants conspired to artificially inflate their
assets (a crime not charged), but that it does not directly prove

a conspiracy to commit wire fraud. (Id. at 4.)

The Court concludes that, although the Stipulation and Order is suggestive of a conspiracy, it does not rise to the level of direct evidence of a conspiracy. The MERL Holdings Injunction offers direct proof of why the alleged loan scheme was shifted from MERL to HCCC at a relevant time. In contrast, the Stipulation and Order offers proof of the interrelationship between MERL and HCCC, but offers nothing that is specific to the crimes charged. Further, the Stipulation and Order does not directly prove Defendants' intent to defraud. Proof that Defendants committed violations of the MERL Holdings Injunction, which enjoined conduct not charged in the Indictment, does not prove Defendants' intent to commit the crimes charged.

However, the Court will permit the Stipulation and Order to be admitted under Rule 404(b), at least as it relates to Co-Defendant Ed Johnson. Other acts evidence has a proper purpose and is relevant if "there [is] an articulable chain of inferences, 'no link of which may be the inference that the defendant has the propensity to commit the crime charged,' connecting the evidence to a material fact." Cross, 308 F.3d at 321 (citations omitted). The Government indicates that the Stipulation and Order found Co-Defendant Ed Johnson in civil contempt for issuing an August 2003 press release that failed to disclose the common ownership structure of MERL Holdings and

Case 1:08-cr-00146-LPS   Document 183   Filed 10/19/09   Page 21 of 24 PageID #: 706

HCCC.  (D.I. 137, at 5, 14.)  Co-Defendant Ed Johnson is alleged
to have committed similar conduct in this action, namely that he
took steps to conceal the true ownership of HCCC. The fact that
he misrepresented HCCC's ownership structure in another matter
not long before the beginning of the fraudulent scheme alleged by
the Indictment goes towards proving absence of mistake on his
part.

In addition, the Court finds that admission of the
Stipulation and Order to prove absence of mistake is not unduly
prejudicial.  In determining whether evidence is unduly
prejudicial, "the focus must be on unfairness in the sense that
the proponent would secure an advantage that results from the
likelihood that evidence would persuade by illegitimate means."
U.S. v. Blyden, 964 F.2d 1375, 1378 (3d Cir. 1992).  The Court
recognizes that permitting the Stipulation and Order to be
introduced could be prejudicial in that the jury might make
impermissible inferences about Co-Defendant Ed Johnson's
character for truthfulness.  However, this propensity to unfairly
prejudice does not substantially outweigh the evidence's
probative value, and can be adequately remedied by a limiting
instruction.

### 4.  Civil Complaint and Jury Verdict

The Court concludes that the Civil Complaint and the Jury
Verdict are not admissible as either intrinsic evidence or Rule

404(b) evidence. The Government contends that these items directly prove the conspiracy because they assist in an explaining why Defendants held their respective roles in MERL and HCCC. (D.I. 137, at 7.) Defendants contend that the Civil Complaint does not directly prove conspiracy because it alleged acts separate and distinct from the present charges. (D.I. 144, at 3.) Defendants further contend that the Jury Verdict is not evidence intrinsic to the crimes charged, but rather, is evidence the Government seeks to use to "complete the story" of the crimes charged. (Id. at 5.)

The scope of acts which constitute and directly prove the offense in conspiracy cases is much broader than in other criminal cases. See U.S. v. Haas, 184 Fed. Appx. 230, 234 (3d Cir. 2006). However, the Third Circuit "insist[s] on a significantly closer connection for exemption from 404(b)" than other Circuits, which have adopted the "inextricably intertwined" or "completes the story" doctrines. Id. at 233-34. While the Johnson Injunction offers direct proof of why Defendants held their respective roles in MERL and HCCC, the Civil Complaint and Jury Verdict merely complete the story of the injunction's existence, rather than proving conspiracy in and of themselves. Accordingly, the Court concludes neither the Civil Complaint nor the Jury Verdict are intrinsic evidence.

In the Court's view, the Civil Complaint is not admissible

as other act evidence under Rule 404(b).  Although the Government
contends the Civil Complaint proves motive in that it
demonstrates why HCCC was utilized, and why Defendants concealed
Co-Defendant Ed Johnson's involvement with HCCC, it is the
outcome of the civil litigation, not the Civil Complaint itself,
which is probative of this motive.  Further, permitting the jury
to be exposed to the list of civil offenses charged by the Civil
Complaint is unduly prejudicial as they are not the same offenses
that are charged criminally.

        Although a somewhat closer call, the Court ultimately
concludes that the Jury Verdict is not admissible under Rule
404(b).  The Jury Verdict arguably goes towards a permissible
purpose in that it proves Defendants' motives to conceal Co-
Defendant Ed Johnson's involvement with HCCC.  However, the
Johnson Injunction and MERL Holdings Injunction adequately speak
to Defendants' motive to conceal without running the same
prejudicial risks that admission of the Jury Verdict entails.
Admitting the Jury Verdict potentially allows the Government to
discuss the nature of the civil charges in more depth, which
would be unduly prejudicial to Defendants.  Further, there is
potential for a jury to be confused as to the meaning of another
jury's verdict on civil offenses.

## V. Conclusion

        For the reasons set forth above, the Government's Motion In

22

Limine To Permit The Introduction Of Defendants' Income Tax
Records (D.I. 135) is granted. The Government's Motion In Limine
To Permit The Introduction Of Evidence Relating To SEC Civil
Lawsuit (D.I. 137) is granted in part and denied in part.
Permission to introduce evidence pertaining to the Final Judgment
of Permanent Injunction entered against MERL Holdings, Inc.com,
the Permanent Injunction entered against Ed Johnson, and the
Stipulation and Order between the SEC and MERL Holdings, Inc.com
Resolving the SEC's Motion for Contempt is granted. Permission
to introduce the Civil Complaint brought by the SEC against Ed
Johnson and MERL Holdings, Inc.com, and the Civil Jury Verdict
against Ed Johnson is denied. Defendants' Motion To Reconsider
Motion to Strike Surplusage From Indictment (D.I. 128, 143) is
denied.

     An appropriate Order has been entered (D.I. 165).