IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Crim. Action No. 08-146-1-2-JJF |
| | : | |
| ED JOHNSON, and | : | |
| G. CAROL JOHNSON, | : | |
| | : | |
| Defendants. | : | |

---

Lesley F. Wolf, Esquire, Assistant United States Attorney, and
Christopher J. Burke, Assistant United States Attorney, of the
OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware,

Attorneys for Plaintiff.

Christopher S. Koyste, Esquire, of CHRISTOPHER S. KOYSTE, LCC,
Bellefonte, Delaware,

Attorney for Defendant Ed Johnson.

Edson A. Bostic, Esquire, Federal Public Defender, and Brian C.
Crockett, Assistant Federal Public Defender, of the FEDERAL
PUBLIC DEFENDER'S OFFICE, Wilmington, Delaware,

Attorneys for Defendant G. Carol Johnson.

---

**MEMORANDUM OPINION**

May 26, 2010
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court are Defendant G. Carol Johnson's Motion For A New Trial[1] (D.I. 212) and Defendant Ed Johnson's Motion For Acquittal Pursuant to Rule 29(c) (D.I. 216). For the reasons discussed, Defendant G. Carol Johnson's Motion For A New Trial will be denied, and Defendant Ed Johnson's Motion For Acquittal Pursuant to Rule 29(c) will be denied.

## I.    Background

On September 11, 2008, Defendant Ed Johnson, and his wife, Defendant G. Carol Johnson (collectively, "Defendants") were charged in a fourteen count Indictment with mail and wire fraud, conspiracy to commit mail and wire fraud, and engaging in an illegal monetary transaction. (D.I. 1.) Defendants were tried before a federal jury and convicted on all counts. (D.I. 200).

## II.    Defendant G. Carol Johnson's Motion For A New Trial

### A.    Legal Standard

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The "decision to grant or deny a motion for a new trial lies within the discretion of the

---

[1] This Motion was originally submitted by Defendant G. Carol Johnson as a Rule 29 Motion For Judgment Of Acquittal. (D.I. 212.) On November 13, 2009, Ms. Johnson filed an unopposed Motion To Re-Caption Her Motion For Judgment of Acquittal As A Motion for A New Trial (D.I. 219.) The Motion To Re-Caption was granted on November 16, 2009.

district court." <u>U.S. v. Cimera</u>, 459 F.3d 452, 458 (3d Cir. 2006).

When a motion for a new trial rests on a claim of prosecutorial misconduct, the Supreme Court has cautioned that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." <u>U.S. v. Lore</u>, 430 F.3d 190, 210 (3d Cir. 2005)(citing <u>U.S. v. Young</u>, 470 U.S. 1, 11 (1985)).  A finding of prosecutorial misconduct requires reversal of a conviction, unless the error is harmless. <u>U.S. v. Brennan</u>, 326 F.3d 176, 182 (3d Cir. 2003); <u>U.S. v. Zehrbach</u>, 47 F.3d 1252, 1265 (3d Cir. 1995)(en banc).  An error is harmless if the Court possesses "a sure conviction that [it] did not prejudice the defendant." <u>Zehrbach</u>, 47 F.3d at 1265 (internal quotation marks omitted).  In determining whether a prosecutor's statements prejudiced a defendant, courts consider three factors: 1) the scope of the improper comments and their relationship to the overall proceeding; 2) the effect of any curative instructions; and 3) the strength of the evidence against Defendant. <u>U.S. v. Mastrangelo</u>, 172 F.3d 288, 297-298 (3d Cir. 1999).

If a defendant asserts, as a basis for a claim of prosecutorial misconduct, conduct that was not contemporaneously

2

objected to at trial, the Court reviews that conduct under the plain error standard of review, meaning the conduct must be "egregious" or cause "a manifest miscarriage of justice" to warrant reversal of the conviction.  Brennan, 326 F.3d at 182.

B.   Discussion

By her Motion, Defendant G. Carol Johnson ("Mrs. Johnson") contends that a new trial is warranted based upon prosecutorial misconduct.  Specifically, Mrs. Johnson points to statements made by the prosecutor during rebuttal, which she contends constituted improper vouching for the lack of credibility of a Government witness, and which impermissibly suggested that Mrs. Johnson had the burden to produce evidence.  The Court will examine each of Mrs. Johnson's contentions in turn.

1.   *Whether Statements By The Prosecutor During Rebuttal Constituted Improper Vouching For A Government Witness*

Improper vouching for a witness is a form of prosecutorial misconduct which may require the reversal of a conviction and the granting of a new trial.  See e.g., U.S. v. Dispoz-O-Plastics, Inc., 172 F.3d 275, 287 (3d Cir. 1999).  The Third Circuit has adopted a two part test for determining whether a prosecutor has improperly vouched for the credibility of a witness.  First, the prosecutor's remarks must "'assure the jury that testimony of a government witness is credible.'"  U.S. v. Harris, 471 F.3d 507, 512 (3d Cir. 2006) (citing U.S. v. Walker, 155 F.3d 180, 187 (3d

3

Cir. 1998)).  Second, the prosecutor's assurance of credibility
must be based on "'either the prosecutor's personal knowledge or
other information not contained in the record.'"  Id.  The
prosecutor's reference to material outside the record may either
be explicit or implicit.  Walker, 155 F.3d at 187.  A prosecutor
is not permitted to vouch for a witness because such vouching can
"'jeopardize the defendant's right to be tried solely on the
basis of the evidence presented to the jury' as the prosecutor's
imprimatur 'may induce the jury to trust the government's
judgment rather than its own view of the evidence.'"  U.S. v.
Vitillo, 490 F.3d 314, 327 (3d Cir. 2007) (citing Young, 470 U.S.
at 18).

     Mrs. Johnson's improper vouching argument is based upon
statements made by the prosecutor concerning the credibility of
the Government's witnesses, Alan Silverstein ("Mr. Silverstein").
Specifically, Mrs. Johnson's argument is that the prosecutor
essentially convinced the jury that it should not believe the
testimony of one of the Government's own witnesses.

     By way of background, Mr. Silverstein testified on direct
examination that he signed two agreements with Mrs. Johnson.  The
first agreement was signed on March 4, 2005, and included a
closing date of March 28, 2005.  The second agreement was signed
on April 4, 2005, and included a closing date of April 22, 2005.
Trial Tr. Day 4, 162:13- 165:15, 168:4- 172:18; GX 64, 66.  Mr.

Silverstein further testified that he paid a funding commitment fee of approximately $207,000 in connection with the March closing, and another $30,000 in connection with the April closing.   Tr. 166:1- 167:17; GX 65.   On cross-examination, Mr. Silverstein testified that he found Mrs. Johnson to be professional, Tr. 186:17-19, that he believed she used her best efforts to get his loans funded, that he did not think she intended to steal his money, and that he didn't believe "she ha[d] a mean bone in her body."   Tr. 205:5- 11.

In her rebuttal argument, the prosecutor stated:

> Take Alan Silverstein.   What Mr. Silverstein doesn't know and what he's telling you.   He doesn't know that the day before he signed and negotiated this agreement for a March 28 closing date, Carol Johnson had been told, don't give closing dates, there is still a long way to go. He didn't know that there was no underwriter for the bonds anymore when he was given a second closing date.   He wasn't told that M.R. Beal was gone.   He doesn't know that the day Carol Johnson received 206,000 dollars in fees from him and his partner, she paid off a 23,000 dollar American Express bill, a bill that was filled with personal expenses, two months rent, 7,500 dollars in moving costs and almost daily meals at a nice restaurant.   He doesn't know that the 30,000 he and Mr. Dinapoli paid for CBIZ never goes to CBIZ . . ."

Trial Tr. Day 7, Vol. 2, 33:5-19.   Based upon these statements, Mrs. Johnson contends that the prosecutor used facts not contained in the record to "essentially inform[ ] the jury to disbelieve Mr. Silverstein" testimony regarding Mrs. Johnson's good character.   (D.I. 213, at 5-6.)   Because "good character evidence was the core of [Mrs. Johnson's] defense," Mrs. Johnson contends that the prosecutor's improper comments regarding Mr.

Silverstein's credibility resulted in "a manifest miscarriage of justice." (Id. at 6.)

In response, the Government contends that Mrs. Johnson has not demonstrated either of the elements required to establish a claim of prosecutorial misconduct based upon improper vouching. (D.I. 230, at 3.) The Government contends that the prosecutor's statements did not serve to assure the jury of Mr. Silverstein's credibility. Rather, the Government contends that the prosecutor's statements were meant to place Mr. Silverstein's testimony in the context of the evidence as a whole, so that the jury could permissibly infer from the other evidence presented at trial, that Mr. Silverstein did not fully know about Mrs. Johnson's character. (Id. at 3-4.) The Government further contends that the prosecutor's statements were explicitly rooted in the evidence presented at trial, and were not based upon the prosecutor's personal knowledge or evidence outside the record. (Id. at 4.) Finally, the Government contends that even if the prosecutor is found to have engaged in improper vouching, it would be harmless error, and Mrs. Johnson would not be entitled to a new trial. (Id. at 6.)

Reviewing the prosecutor's statements in light of the applicable law, the Court concludes that Mrs. Johnson has not established that reversal of her conviction and a new trial is required. In reaching this determination, the Court concludes,

6

in the first instance, that the prosecutor's statements do not
amount to improper vouching, because they did not serve to assure
the jury of Mr. Silverstein's credibility.[2]  Mrs. Johnson
contends that "[t]he dangers posed by prosecutorial assurances
that their witness is credible are the same dangers posed when
the prosecutor assures the jury that their witness is not
credible." (D.I. 234, at 3.)  However, Mrs. Johnson cites no case
law to support her argument, and the Court is not persuaded that
the prosecutor's remarks are substantively directed to Mr.
Silverstein's credibility.  Rather, it appears to the Court that
the prosecutor was not questioning Mr. Silverstein's veracity
regarding his beliefs concerning Mrs. Johnson's good character,
but only pointing out the evidence introduced at trial that
tended to disprove her good character.

However, even if the Court accepts Mrs. Johnson's "reverse
vouching" argument, which is unsupported by any cited case law,
the Court concludes that the prosecutor's statements did not

---

[2]     The Court is also not persuaded that the prosecutor
relied on evidence outside the record to comment on Mr.
Silverstein's credibility.  Mrs. Johnson contends that Mr.
Silverstein was never asked whether he knew, at the time of his
testimony, about the Jarius e-mail or that Carol Johnson did not
have the ability to fund the loans.  In the Court's view,
however, the inference made by the prosecutor that Mr.
Silverstein did not know of these things at the time he opined on
Mrs. Johnson's character is a reasonable and permissible
inference from the record and not a suggestion based upon
information unique to the prosecutor's personal knowledge as
required to establish impermissible vouching.

result in prejudice to Mrs. Johnson or in a manifest miscarriage of justice such that the outcome of these proceedings would have been different.[3]  U.S. v. Vitillo, 490 F.3d 314, 329 (3d Cir. 2007).  The Government presented eighteen witnesses and over a hundred exhibits during a nine-day trial.  The circumstantial evidence rebutting Mrs. Johnson's "good character" defense was substantial.  Further, the contested statements made by the prosecutor were limited in their scope and duration and made in the context of the Government's review of the evidence as a whole such that they were not strongly highlighted above any of the other evidence presented by the Government.  Tr. 33:3-35:5.  In addition, the Court, in its jury instructions, reminded the jury that "what the lawyers said is not evidence," and that "[y]ou, as jurors, you're the sole judge of the credibility of the witnesses."  Trial Tr. Day 7, Vol. 2, 43:13-14, 46:13-16, 48:15-16; D.I. 197, at 2-4, 7-8.  Accordingly, the Court concludes that Mrs. Johnson has not established that a new trial is warranted based upon impermissible vouching by the prosecutor.

>    2.    *Whether Statements Made By The Prosecutor During Rebuttal Constituted Improper Burden Shifting*

Burden-shifting is another form of prosecutorial misconduct which may require the reversal of a conviction and the granting

---

[3]     The Court notes that defense counsel did not object to the prosecutor's statements, and therefore, any errors must be reviewed under the plain error standard of review.

of a new trial.  <u>See</u> <u>U.S. v. Mastrangelo</u>, 172 F.3d 288, 298 (3d

Cir. 1999).  A prosecutor may not improperly suggest that a

defendant has the burden to produce evidence.  <u>U.S. v. Balter</u>, 91

F.3d 427, 441 (3d Cir. 1996)(citations omitted).  However, a

prosecutor is permitted to "focus the jury's attention on holes

in the defense's theory."  <u>Id.</u>

Mrs. Johnson's burden shifting argument concerns statements

the prosecutor made during rebuttal about the evidence relied

upon by Defendant's counsel during closing arguments.

Specifically, the prosecutor stated:

> Ladies and gentlemen, you may have noticed that [Mrs.
> Johnson's attorney] talked about what was going on at the
> company.  He didn't show you a lot of documents.  He showed
> you a lot of testimony.  He pulled it out.  And there's a
> reason he didn't show you a lot of documents.  Carol
> Johnson's name is all over them.  She is everywhere.  She
> signs the letters.  She signed the Funding Commitment, the
> Funding Commitment which Mr. Slavitt said in his 50 years of
> business – years of experience in real estate, you don't get
> a Funding Commitment unless there is money there.

Trial Tr. Day 7, Vol. 2, 35:19- 36:2.[4]  Mrs. Johnson contends

that these statements clearly implied that if she were actually

innocent, she would have produced documents proving her

innocence.  (D.I. 234, at 7.)  By making such an implication,

---

[4]     Immediately after the conclusion of the prosecutor's
rebuttal, defense counsel requested the Court to instruct the
jury that Defendant did not have any obligation to present
evidence on her behalf.  The Court denied defense counsel's
request on the grounds that the burden of proof would be
discussed in detail during the jury instructions.  Tr. 41:2 -
42:8.

9

Mrs. Johnson contends that the prosecutor impermissibly shifted the burden to produce exculpatory evidence on Mrs. Johnson. (D.I. 213, at 7.)  Mrs. Johnson further contends that these statements do not constitute harmless error, and that she suffered prejudice as a result.  (D.I. 234, at 8.)

In response, the Government contends the prosecutor was referring to the arguments made, and evidence relied upon, by defense counsel in his closing argument, and was not referring to the evidence generally presented by Mrs. Johnson during the trial.  (D.I. 230, at 7.)  The Government contends that the prosecutor's statements were made to point out flaws in defense counsel's closing arguments, rather than to make the jury question why Mrs. Johnson did not produce exculpatory documents. (Id. at 8.)  Specifically, the Government contends that it sought to "return[] the jury's attention to the documents admitted into evidence that were signed by the defendant--and that demonstrated her guilty knowledge--documents that defendant had not utilized in its closing argument."  (Id.)

After reviewing the prosecutor's statements in light of the applicable legal principles, the Court concludes that the prosecutor's statements did not impermissibly shift the burden to produce exculpatory evidence to the defense.  The prosecutor specifically stated that she was addressing defense counsel's suggestion that Mrs. Johnson did not know what was going on at

Heritage Capital Credit Corporation ("Heritage").  Tr. 35:5-6.
The contested statements were made in between references to her
background as a former senior vice-president at GMAC, and a
review of other evidence in the record which the prosecutor used
to rebut her good character defense.  See Tr. 35:6 - 39:6.  In
the Court's view, and in the context of the prosecutor's remarks
as a whole, the prosecutor's statements are properly
characterized as focusing the jury on the "holes" in Mrs.
Johnson's good character defense.  The prosecutor was not so much
suggesting that the defense should have produced its own
exculpatory documents, but rather highlighting why defense
counsel only referred to certain documents in evidence -
specifically because the remaining documents had her name "all
over them" demonstrating her knowledge.

     The Court further concludes that, even if the prosecutor's
statements can be said to have impermissibly implied the shifting
of a burden to Mrs. Johnson, the error was harmless and did not
result in prejudice to her.  As the Government points out, the
prosecutor's remarks were isolated and not a pattern or extensive
argument.  Rather, the prosecutor noted defense counsel's failure
to rely on the substantial documentary evidence in the record and
quickly turned to discuss all of the Government's evidence in the
record.  (D.I. 230, at 9.)  Although an immediate curative
instruction was not given, the Court thoroughly discussed the

burden of proof in the jury instructions which were given shortly
after the parties' closing arguments.   In these instructions, the
Court specifically addressed any suggestion by the attorneys that
Defendant was required to produce evidence and categorically
stated that she had no such burden.   Specifically, the Court
stated:

> The burden or obligation of proof is on the government to
> prove that the defendants are guilty and this burden stays .
> . . throughout the trial.   Sometimes I think in the course
> of this trial, the government attorneys in argument might
> say that the defendant didn't produce anything.   But what
> you're to understand is that that's argument.   It's not
> evidence in the case.   <u>More importantly, defendants have no
> obligation to produce anything at all.   The burden is on -
> there is only one burden in a criminal case, it's on the
> government.</u>

Tr. 51:16 - 52:1; D.I. 197, at 10-11 (emphasis added).   Further,
as discussed in the context of Mrs. Johnson's vouching argument,
the Government presented substantial evidence throughout the
course of the trial to rebut Mrs. Johnson's good character
defense.   Accordingly, the Court concludes that Mrs. Johnson is
not entitled to a new trial based upon impermissible burden
shifting statements made by the prosecutor.

## III. Defendant Ed Johnson's Motion For Acquittal Pursuant to Rule 29(c)

### A.   Parties' Contentions

By his Motion, Defendant Ed Johnson ("Mr. Johnson") seeks
acquittal of his convictions contending that the required

elements of the offenses were not proven beyond a reasonable doubt at trial. (D.I. 216 ¶ 3.) Specifically, Mr. Johnson contends that the Government failed to prove beyond a reasonable doubt that Defendants "knowingly devised a scheme to defraud or obtain money or property by materially fraudulent pretenses, representations or promises," and that the Defendants did so with "the intent to defraud." (Id.) Mr. Johnson asserts that the evidence presented at trial supports a conclusion that his statements with regard to funding loans were, in hindsight, inaccurate, but that the evidence does not support an intent to defraud. (Id. ¶¶ 3-5.) Mr. Johnson also contends that no witnesses testified that Defendants did not diligently attempt to fund the loans. (Id. ¶ 5.) Although Mr. Johnson recognizes evidence was presented on funding commitments he made with Templo Fuente de Vida ("Templo"), he contends he was never required to perform these commitments because Templo failed to meet its underlying commitments. (Id.) Accordingly, Mr. Johnson argues there is insufficient evidence to support a scheme to defraud. (Id.) In turn, Mr. Johnson contends that because the evidence does not support the existence of a scheme to defraud, there is no proper foundation for the jury's finding that the money and property obtained were derived from an unlawful activity. (Id. ¶ 6.)

In response, the Government contends that the totality of the evidence presented at trial supports the jury's verdict and constitutes proof beyond a reasonable doubt of Defendants' intent to defraud.  (D.I. 220 ¶ 6.)  Specifically, the Government points to a dozen pieces of evidence presented at trial, which the Government contends serve as proof of intent to defraud.  (<u>Id.</u> ¶ 5.)  This evidence includes, <u>inter alia</u>, Defendants' failure to disclose that M.R. Beal had withdrawn as underwriter, and statements Defendants made to witnesses Patrick Williamsen and Byron Rambo.  (<u>Id.</u>)

B.   <u>Legal Standard</u>

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, "[i]f a jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal."  Fed. R. Crim. P. 29(c).  In conducting a sufficiency of the evidence review under Rule 29, the Court must examine "the totality of the evidence, both direct and circumstantial."  <u>U.S. v. Gambone</u>, 314 F.3d 163, 170 (3d Cir. 2003)(citing <u>U.S. v. Beckett</u>, 208 F.3d 140, 151 (3d Cir. 2000)).  Evidence must be interpreted in the light most favorable to the Government, as the verdict winner, and all available inferences must be credited in favor of the Government.  <u>Id.</u>; <u>U.S. v. Miller</u>, 527 F.3d 54, 60 (3d Cir. 2008). The Court must take care to "not usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by

14

substituting its judgment for that of the jury." <u>U.S. v. Brodie</u>, 403 F.3d 123, 133 (3d Cir. 2005).  If any rational trier of fact could have found proof of guilt beyond a reasonable doubt based upon the evidence presented, then the jury's verdict should be upheld.  <u>Id.</u>  Thus, the Court should only find that the evidence is insufficient to support a conviction if "the prosecution's failure is clear." <u>Id.</u> (citing <u>U.S. v. Smith</u>, 294 F.3d 473, 477 (3d Cir. 2002)).

C.   <u>Discussion</u>

In order to sustain a conviction for conspiracy to commit mail and wire fraud under 18 U.S.C. § 1349, the Government was required to prove beyond a reasonable doubt that: (1) two or more persons entered into the unlawful agreement to fraudulently commit mail fraud and wire fraud; and (2) that the person charged knowingly and intentionally became a member of the conspiracy.

A conviction for mail fraud under 18 U.S.C. § 1341, requires the Government to prove beyond a reasonable doubt that (1) the defendant knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, or representations; (2) the defendant acted with the intent to defraud; and (3) in advancing, furthering, or carrying out the scheme, the defendant used either the mails or a private or commercial interstate carrier, or caused the mails or a private commercial interstate carrier to be used.

15

A conviction for wire fraud under 18 U.S.C. § 1343, requires the Government to prove beyond a reasonable doubt that: (1) the defendant knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, or representations; (2) the defendant acted with the intent to defraud; and (3) in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

A conviction for engaging in an illegal monetary transaction under 18 U.S.C. § 1957, requires the Government to prove beyond a reasonable doubt that: (1) defendant engaged or attempted to engage in a monetary transaction in or affecting interstate commerce; (2) the monetary transaction involved criminally derived property of a value greater than $10,000; (3) the property was derived from specified unlawful activity; (4) the defendant acted knowingly, that is, with the knowledge that the transaction involved proceeds of a criminal offense; and (5) the transaction took place in the United States.

After reviewing Mr. Johnson's argument in the context of the applicable law and the record as a whole, the Court concludes that Mr. Johnson is not entitled to relief and that the evidence

16

sufficiently supports Defendants' convictions.  At trial, the
Government presented eighteen witnesses and over one hundred
exhibits supporting the elements of the aforementioned crimes.
(See D.I. 207, 208.)  Mr. Johnson contends that the evidence
presented about early funding commitments with Templo cannot
support a finding of intent to defraud because he was excused
from performance by Templo's failure to meet conditions
precedent.  (D.I. 216 ¶ 5.)  However, the evidence presented at
trial demonstrates that the $3 million early funding commitment
entered into by Mr. Johnson was not conditioned on completion of
zoning requirements.  Trial Tr. Day 2, 23:20- 24:1 (testimony of
Ben Slavitt that he understood that the early funding commitment
was revised to "do[] away with the issue of resolving the zoning
and the building requirements, so [Templo] didn't have to do any
of that, and they were going to make the money available to
purchase the land"); Tr. 92:8-13 (testimony of Ben Slavitt that
"[u]nequivocally, Mr. Johnson told us over and over again, that
he would provide the $3 million to purchase the property, after
which were would worry about and we would deal with whatever the
conditions for the permanent loan were."); GX 5, 91.  Moreover,
several witnesses testified that, at the purported closing for
Templo's early funding commitment, Mr. Johnson congratulated
Templo on getting the loan and made no mention of additional
conditions.  Trial Tr. Day 1, 36:17- 38:2 (testimony of Sarai

Castillo); Trial Tr. Day 2, 29:20- 31:7 (testimony of Ben Slavitt).

Beyond evidence regarding the Templo loans, the Court finds that additional substantial evidence was presented to support Mr. Johnson's intent to defraud. Byron Rambo, a former Heritage broker, testified that he promised potential loan applicants that Heritage was able to fund their loans because Mr. Johnson represented to him that the bond offering had been approved and that the bonds were ready for sale. Trial Tr. Day 4, 107:8-13, 116:14-16, 116:20-24. James Peacock, another former Heritage broker, testified that Mr. Johnson represented to him that Heritage had four loans "on the books," including one to Templo, when Heritage actually had not funded any loans. Tr. 210:2-15. Further, it was undisputed at trial that Heritage collected over $1.5 million in loan application fees, yet never funded a single loan. Based on the direct and circumstantial evidence described above and contained in the record, the Court concludes that sufficient evidence was presented on which the jury reasonably could have found the required elements of the charged offenses, including particularly that Mr. Johnson possessed the requisite intent to defraud.

## IV. Conclusion

For the reasons discussed, the Court will deny Defendant G. Carol Johnson's Motion For A New Trial. The Court will also deny

Defendant Ed Johnson's Motion For Acquittal Pursuant to Rule 29(c).

An appropriate Order will be entered.