**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ED JOHNSON, )
)
Petitioner/Defendant, )
)
v. ) Criminal Action No. 08-146-LPS
) Civil Action No. 12-403-LPS
UNITED STATES OF AMERICA, )
)
Respondent/Plaintiff. )

**MEMORANDUM ORDER**

Pending before the Court is Ed Johnson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (D.I. 294)[1] For the reasons set forth below, the Court will deny Defendant's motion.

**BACKGROUND**

Ed Johnson ("Johnson") along with his wife, Carol Johnson,[2] operated a business, Merl Financial Group ("Merl"), which offered loans to applicants seeking funds for a variety of business and development projects. (D.I. 303 at 3-4) Merl served as the parent company of a number of smaller companies, one of which, Heritage Capital Credit Group ("HCCC"), is the focus of the current case. (D.I. 294 at 16) Johnson offered loans to a number of businesses

---

[1]Johnson has also filed an Amended Motion to Vacate under 28 U.S.C. § 2255 (D.I. 298) and a Second Amended Motion (D.I. 311). The Court has considered the contentions in each of these filings and disposes of all of the pending motions by this Order.

[2]While Johnson's papers contain arguments that could also be pressed by his wife, his Motion is personal only to him, so the Court only addresses the claims as they relate to him. *See* 28 U.S.C. § 2255; *Pickard v. United States*, 312 F. Supp.2d 735, 740-41 (D.V.I. 2004) (stating defendant does not have standing to raise ineffective assistance of counsel claim as relates to co-defendant's attorney).

through HCCC by means of a complex and novel loan instrument he created and called a Business Collateralized Line of Credit ("BCLOC"). (*Id.* at 16-17) In order to secure funding through a BCLOC, it was necessary for Johnson and his wife to create "bond-like collateralized debt obligations" for sale. (D.I. 303 at 9) In order for Johnson's plan to be feasible, these "bonds" needed to receive an investment grade rating from Standard & Poor's. (*Id.*) Ultimately, Johnson collected in excess of $1.5 million in advance fees without funding a single loan. (*Id.* at 4)

On September 11, 2008, a grand jury indicted Johnson on multiple counts of mail and wire fraud, engaging in an illegal monetary transaction, and conspiracy. (*Id.* at 2)[3] Trial began on October 20, 2009 and, on October 29, 2009, the jury returned a verdict of guilty on all counts. (*Id.*) On May 26, 2010, the Court sentenced Johnson to 120 months imprisonment, three years of supervised release, and a $1400 special assessment. (*Id.* at 2-3) On October 24, 2011, the Third Circuit affirmed, noting there was "abundant" evidence of Johnson's guilt (and further observing that Johnson acknowledged as much). *See United States v. Johnson*, 449 Fed. Appx. 149, 152-53 (3d Cir. Oct. 24, 2011).

**DISCUSSION**

Pursuant to 28 U.S.C. § 2255, Johnson may seek relief on the ground that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

Johnson proceeds *pro se*. Accordingly, the Court is required to construe his filings

---

[3]Carol Johnson was also indicted and proceeded to trial along with her husband.

liberally. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998). Having done so, the Court discerns three grounds on which Johnson seeks relief: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) extreme punishment.[4] The Court addresses each of these grounds below.[5]

## I.    Ineffective Assistance of Counsel

Johnson contends that he was deprived of his Sixth Amendment right to effective legal assistance. (D.I. 294 at 25; *see also* D.I. 298 at 5-6) The Court reviews this claim pursuant to the two-prong standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first prong of *Strickland*, Johnson must demonstrate that counsel's performance fell below an objective standard of reasonableness, with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See id.* at 688. That is, the Court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Under the second prong, Johnson must affirmatively show that counsel's deficient performance prejudiced his case. *See id.* at 692–93. That is, Johnson must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When applying the *Strickland* test, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

---

[4]The government categorizes Johnson's claims in the same manner, and Johnson has not challenged this categorization.

[5]The Court denies Johnson's request for an evidentiary hearing, as the record "conclusively show[s]" that he is not entitled to any relief. 28 U.S.C. § 2255; *see also United States v. McCoy*, 410 F.3d 124, 132 (3d Cir. 2005).

Here, Johnson alleges that his counsel, Christopher S. Koyste ("Counsel"), was ineffective because he was: (1) inadequately prepared for trial; (2) ineffective in his cross-examination of the government's witnesses; (3) ineffective in failing to object to the government's entry of evidence; (4) ineffective in failing to subpoena certain documents; (5) ineffective in failing to seek a continuance of trial; (6) ineffective in failing to retain or call expert witnesses during trial; (7) ineffective in failing to request a variance of Johnson's sentence after trial; and (8) ineffective in failing to allow Johnson to testify at trial. (D.I. 294 at 27-38) The Court addresses these contentions in turn.

**A. Inadequate Preparation for Trial**

Defendant asserts that Counsel inadequately prepared for trial, resulting in a failure by Counsel to understand the legal issues and factual matters underlying the case. (*Id.* at 26) In response, the government has submitted an affidavit from Counsel. (D.I. 303 at 16) In his affidavit, Counsel declares that he assembled a team to assist in the preparation of Johnson's case and expended significant resources hiring a private investigator and paralegal to assist him. (D.I. 303-4 at 2) Counsel also retained expert witnesses from Santoro CPA group to analyze the evidence and potentially testify at trial. (*Id.*) Among other things, Counsel learned through his pretrial investigation that documents Johnson now contends Counsel should have investigated further – including public documents from HCCC or Merl (*see* D.I. 304 at 21) – supported the government's allegations that loan applicants were being misled as to the status of their loans (D.I. 303-4 at 3-4; *see also id.* at 3 ("Unfortunately, the Ed Johnson defense team's investigation revealed that the foundational components to make such a sale of bonds occur, never actually took place within the time line that such components needed to occur.")) Even assuming

Counsel did not inform Johnson of all of his pretrial efforts – and Johnson alleges Counsel did not (D.I. 304 at 20-21) – there is no basis to doubt that Counsel did, in fact, undertake these efforts. The record does not support a finding that Counsel's trial preparation fell below the objective standard of reasonableness.

Nor has Johnson shown that pursuit of his suggested investigative steps would have led to a reasonable probability of a different verdict. To the contrary, the Court agrees with the government that "[b]ecause [Johnson's] theory was contradicted by the facts, both as uncovered in counsel's investigation and as presented by the government at trial, he suffered no prejudice from the purported failure of his attorney to adequately pursue, prepare and present such a defense at trial." (D.I. 303 at 17)

**B. Ineffective Cross-Examination**

Johnson contends that Counsel was ineffective in cross-examination of government witnesses. (D.I. 294 at 27-34) In particular, among others, Johnson faults Counsel's examinations of IRS Revenue Agent Louis Rosenblum; Winston Chang and James Palmisano of Standard and Poor's; Jarius DeWalt of M.R. Beal; FBI Special Agent Peter Gangel; and former HCCC employee Tony Grant.

The Court has reviewed the trial testimony, as well as Counsel's discussion of his strategic decisions (*see* D.I. 303-4 at 5-8), and finds no basis to conclude that Counsel's cross-examination fell below an objective standard of reasonableness. For example, despite Johnson's contention that Counsel inadequately examined DeWalt by neglecting to question his conflicting interests in a BCLOC transaction (D.I. 294 at 30-31), in fact Counsel did question DeWalt along these lines during trial (D.I. 303-4 at 8; D.I. 303 at 18). Johnson faults Counsel for not eliciting

evidence showing Special Agent Gangel's lack of expertise (D.I. 294 at 29-30), but Gangel did not provide expert testimony (D.I. 303 at 19; D.I. 303-4 at 7). In the end, Johnson has failed to meet his burden on either prong of the *Strickland* test. *See generally Hess v. Mazurkiewicz*, 135 F.3d 905, 908 (3d Cir. 1998) (holding that counsel's strategic trial decisions are accorded great deference).

**C. Failure to Object to Government Exhibits**

Johnson has failed to show that Counsel was ineffective for not objecting to the admission of government exhibits, for reasons including that he fails to identify any specific exhibit to which he believes Counsel should have objected and the legal bases on which such objections would have been made. (D.I. 294 at 34)

**D. Failure to Subpoena Certain Documents**

Johnson alleges Counsel was ineffective for failing to subpoena documents supporting the viability of a BCLOC as a legitimate method of funding loans, including bond documents demonstrating that the Luxembourg Stock Exchange had approved his bond offerings in 2005 and public financial statements from HCCC demonstrating that six previous BCLOC transactions had been successfully closed. (*Id.* at 37) Both the government and Counsel explain that the "closed" BCLOC transactions were not "closed" in a way that made them pertinent to defending Johnson against the charges he faced. (D.I. 298 at 9-13; D.I. 303 at 22; D.I. 303-4 at 7) Johnson has failed to demonstrate that Counsel was constitutionally ineffective for failing to subpoena these documents.

**E. Failure to Seek Continuance**

Johnson's contention that Counsel failed to seek a continuance of trial (D.I. 294 at 37) is

not supported by the record, which shows, to the contrary, that Counsel filed three motions for a continuance (D.I. 48, 61, 139), two of which were denied by the Court (D.I. 70).

### F. Failure to Call or Retain Expert Witnesses

Johnson asserts that, given the complexity of the issues, Counsel should have employed an SEC securities expert, a dealer or broker from FINRA, Johnson's tax attorney, and an expert who could explain the technical details of the BCLOC plan. (D.I. 294 at 38) As the government observes, Johnson fails to explain the purpose of an SEC expert. (D.I. 303 at 23) The other topics were addressed by the expert witness co-defendant did call at trial – Dr. Campbell – who testified to, among other things, the SEC Rules, "how public stock is a cash equivalent," and the relationship between public stock and income. (*Id.* at 23)[6] Counsel had also retained the Santoro CPA group to explore many of the issues raised by Johnson, but Santoro's investigation reasonably led Counsel to conclude there would be no benefit to Johnson from such testimony. (D.I. 303-4 at 4 ("The retaining of the Santoro CPA Group was done as part of a strategic decision with the defense team of Carol Johnson, and each of the parties determined that Santoro's analysis was not something that was going to yield anything that was viewed as being beneficial at trial; so neither defense team called upon anyone from Santoro to present testimony."))

The Court finds no basis to conclude that additional expert testimony on the points identified by Johnson would, with reasonable probability, have affected the outcome of the trial. Indeed, the Court agrees with the government: "Because none of these witnesses would have

---

[6]While it was co-defendant, Carol Johnson, who called Dr. Campbell to testify, that testimony applied equally to Johnson as well.

addressed the key issue in the case – [Johnson's] material misrepresentations regarding the ability to obtain funding on behalf of his clients [–] he suffered no prejudice . . . ." (D.I. 303 at 23)

### G. Failure to Request a Variance in the Sentence After Trial

Johnson argues that Counsel was ineffective in not seeking a variance of his sentence based on Johnson's forgiveness of $4.3 million of promissory notes signed by 17 of HCCC's customers in conjunction with BCLOC applications. (D.I. 294 at 38) Counsel reasonably made the determination that such an argument would be meritless as it was founded on the premise that the applicants owed Johnson money – despite the jury's finding of fraud. (D.I. 303-4 at 7; *see also* D.I. 303 at 24 (government arguing there is "no evidence that either the money was owed or that defendant provided any forgiveness of this debt, and as such there was no basis for seeking a variance")) Counsel was not ineffective for failing to make what he reasonably concluded was a meritless argument.

### H. Failure to Allow Defendant to Testify

Johnson contends that Counsel was ineffective in failing to allow him to explain to the jury the intricacies of the BCLOC plan. (D.I. 294 at 25) Counsel states in his affidavit that the choice not to testify was made by Johnson with consultation from Counsel. (D.I. 303-4 at 4)[7]

---

[7]Counsel declares:

> The decision of Ed Johnson to not testify was a strategic decision made by Ed Johnson with the advice of [Counsel]. The final determination was made in the courtroom during a conversation between Mr. Johnson, [Counsel], and investigator Thomas Monahan, in which Ed Johnson emphatically indicated that he did not wish to testify at trial. Although Mr. Johnson raised after the close of trial that he at that time wanted to be able to

There is no evidence that Johnson was prevented by Counsel from exercising his right to testify in his own defense, nor that Counsel's conduct with respect to that decision was deficient. Additionally, Johnson fails to articulate how his testimony – which would have been subject to cross-examination, in which the jury would have learned, among other things, of his criminal background – would have been reasonably probable to result in a different verdict. (*See* D.I. 303 at 26)

## II. Prosecutorial Misconduct

Johnson next contends that the government improperly concealed exculpatory evidence, apparently in violation of its obligations pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order to show such prosecutorial misconduct, Johnson must demonstrate that the government: (1) suppressed or withheld evidence; (2) that is favorable to the defense; and (3) is material to the case. *See Moore v. Illinois*, 408 U.S. 786, 795 (1972). Materiality in this context requires "that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The Court agrees with the government that Johnson's *Brady* claim has been procedurally defaulted due to Johnson's failure to raise it previously. (D.I. 303 at 27-8) A motion pursuant to 28 U.S.C. § 2255 is not a substitute for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982). Johnson must show both "cause for the procedural default and prejudice

---

> testify, he was reminded by both Counsel and by the investigator of his clear decision to not testify during the trial. Thus, any assertions by Mr. Johnson about what would have happened at trial, did not occur due to nothing [about Counsel's] conduct, but were part of Ed Johnson's strategic decisions to not testify.

(D.I. 303-4 at 4)

attributable thereto in order to obtain review of his defaulted constitutional claim." *Murray v. Carrier*, 477 U.S. 478, 485, (1986). He has failed to do so. Even assuming Johnson can show cause via his allegations that appellate counsel defied his wishes by failing to raise *Brady* claims on appeal (D.I. 297 at 1),[8] Johnson fails even to attempt to meet the prejudice prong, as he does not argue how, if at all, the thirteen sets of evidence he identifies as wrongfully suppressed (*see* D.I. 294 at 41-43) could have altered the outcome of the case.

To the extent Johnson is instead arguing that the government acted vindictively by not presenting to the jury all of the evidence the government had collected in its investigation – an argument the government finds in Johnson's papers – that claim, too, must be denied. The government correctly observes that Johnson "identifies no rule of law (as none exists) that obligates the government to present to the jury each and every document or piece of evidence obtained in connection with a case." (D.I. 303 at 29)

**III. Extreme Punishment**

Finally, Johnson asserts a claim of extreme and unconstitutional punishment due to the length of his imprisonment. (D.I. 294 at 44-47) This claim is procedurally defaulted, as Johnson did not raise it at trial, sentencing, or on direct appeal. Furthermore, not only is Johnson's sentence of 120 months incarceration below the statutory maximum he could have received, it is also significantly below the advisory range provided for in the United States Sentencing Guidelines (which was 188-235 months). (D.I. 268 at 6; D.I. 303 at 29)

---

[8]*See generally Jones v. Barnes*, 463 U.S. 745, 754 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . ."); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

## IV. Additional Motions

During the pendency of Johnson's Motion, he has filed numerous (often quite lengthy) submissions.[9] In reaching the decisions announced in the instant Order, the Court has reviewed all of these filings.

Specifically, the Court has considered: Johnson's original Motion, filed on April 2, 2012 (D.I. 294); Johnson's letter filed on April 30, 2012 (D.I. 297); Johnson's Amended Motion to Vacate Under 28 U.S.C. § 2255, filed on May 21, 2012 (D.I. 298); Johnson's letter filed on May 29, 2012 (D.I. 299); Johnson's reply to the government's response to his Motion, filed on July 27, 2012 (D.I. 304); Johnson's "Demurrer Judgment in Lieu of Otherwise Obligatory Evidentiary Hearing," filed on October 10, 2012 (D.I. 305);[10] Johnson's "Motion for Immediate Dismissal Pursuant to Federal Rule 56," filed on November 21, 2012 (D.I. 306);[11] Johnson's letter filed on February 19, 2013 (D.I. 307); Johnson's supplemental brief, filed on March 4, 2013 (D.I. 310);[12]

---

[9]Johnson also filed a petition for a writ of mandamus with the Third Circuit, on March 1, 2013. On July 3, 2013, the Third Circuit denied his petition. *See In Re: Ed Johnson*, No. 13-1562 (3d Cir. July 3, 2013).

[10]While Johnson entitles this document a "Demurrer" and, by it, "moves this court, pursuant to Federal Rule, Civil Procedure 56, [to] dismiss this case" (D.I. 305 at 1), the Court understands Johnson to be moving for summary judgment. As Johnson has not shown his entitlement to such relief, his request will be denied.

[11]Again, the Court interprets this motion as a request for summary judgment. Again, the Court finds no basis to grant the requested relief.

[12]It is unclear if by this filing Johnson intended to add new claims to his § 2255 motion. He references the "elements of wire fraud," "no full discovery or complete evidence provided," "probation officer falsified pre-sentence information," and "the prosecutor provided materially false statements to the Court." (D.I. 310 at 3-6) The Court views these issues as being subsumed within the three grounds for relief Johnson has asserted from the beginning of these proceedings: ineffective assistance of counsel, prosecutorial misconduct, and excessive punishment. In any event, the Court discerns in this filing no basis for relief.

Johnson's letter motion to amend and file exhibits, filed on March 14, 2013 (D.I. 311);[13] Johnson's supplemental brief and motion for bond pending appeal, filed on May 22, 2013 (D.I. 313);[14] and Johnson's Pro-Se Motion to Amend the Previously Filed Motion for Release Pending Adjudication of His § 2255 Petition, filed on July 15, 2013 (D.I. 314).[15] In the discussion above, the Court has endeavored to identify and address the various grounds on which Johnson seeks relief. The Court has found no claims that contain merit. Thus, the Court will deny all of Johnson's motions.

## CONCLUSION

Accordingly, for the reasons stated above,

IT IS HEREBY ORDERED that:

1. Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (D.I. 294) is DENIED.

2. Defendant's Amended Motion to Vacate Under 28 U.S.C. § 2255 (D.I. 298) is DENIED.

3. Defendant's Motion to Dismiss (D.I. 306) is DENIED.

4. Defendant's Motion to Amend and File Exhibits (D.I. 311) is DENIED.

---

[13]In this submission, Johnson contends that the prosecutor made a misstatement to the Court. Even assuming that were correct, the Court discerns in this filing no basis for Johnson's requested relief.

[14]Johnson subsequently indicated that he intended to be seeking release pending resolution of his Motion, not pending appeal. (*See* D.I. 314, 315)

[15]As the Court is denying Johnson's § 2255 Motion, it follows that the Court will also deny his request for release pending resolution of that Motion.

5. Defendant's Motion for Release Pending Adjudication of Habeas Petition (D.I. 314) is DENIED.

August 2, 2013
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE